UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARLOS LARA,<br><br>    Plaintiff,<br><br>    v.<br><br>CORIZON CORRECTIONAL HEALTHCARE, P.A. BROWN, SAM PIERSON, GRANT ROBERTS, R.N. RONA SIEGERT, NURSE RILEY, WARDEN RANDY BLADES c/o EDWARD PEARSON, and C/O BRIAN KLINGENSMITH,<br><br>    Defendants. | Case No. 1:17-cv-00186-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

There are three motions currently pending before the Court. First, is Defendant Rona Siegert's Motion for Summary Judgment. Dkt. 21. Second, is Plaintiff Carlos Lara's ("Lara") Cross-Motion for Partial Summary Judgment. Dkt. 30. Third, is Defendants Corizon Correctional Healthcare ("Corizon"), P.A. Brown ("Brown"), Sam Pierson ("Pierson"), and Grant Roberts' ("Roberts") Motion for Summary Judgment. Dkt. 33.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist.

Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT Defendants Motions for Summary Judgment (Dkt. 21; Dkt. 33) and DENY Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 30).

## II. BACKGROUND

Lara is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at Idaho State Correctional Center. He alleges that in February 2017, he developed an ingrown toenail on his left foot. Dkt. 3, at 8. On February 15, 2017, Defendant Brown, a physician's assistant, removed the toenail, cleaned Lara's wound, and told him to hold gauze over the wound until he could get back to his unit. He also told Lara to hold toilet paper on the wound until the bleeding stopped and to take ibuprofen for pain. Lara reminded Brown that he is allergic to ibuprofen, at which point Brown "got mad at [him] and yelled, 'Oh well! It will probably get infected anyways.'" *Id.*

Lara requested pain medication for his toe the next day and was told by a nurse to fill out a Health Services Request ("HSR") form. *Id.* at 8-9. Two days after Lara's toenail was removed, another nurse informed him that he "should have been given gauze for such a wound." *Id.* at 9.

Lara obtained gauze from the medical unit, but when he removed the gauze later that morning, "he had puss [sic] and blood leeking [sic] out of his toe." *Id.*  Lara claims that his wound ultimately became infected. Three days after the toenail was removed, he was examined by a nurse after he submitted an HSR. She informed him that "she would talk to P.A. Brown about the infection and try to get [him] on antibiotics." *Id.* at 10.

The next day, a nurse changed Lara's gauze, and he was placed on a course of antibiotics. Although Lara states that he was in significant pain, the unidentified medical provider that performed his next evaluation allegedly "refused him pain medication." *Id.* Eight days after the toenail was removed, P.A. Brown examined Lara, "looked at the toe, and said, 'I told you it would get infected' then he [l]aughed . . . and said, 'Well, welcome to prison.'" *Id.* at 11.

Lara submitted several concern forms and grievances with respect to his medical treatment following the removal of the toenail. Most of them were returned with the instruction, "Submit an HSR." *Id.* at 11-14. With respect to his concerns that a physician's assistant was not qualified to remove his toenail, Defendant Pierson responded (1) that a physician's assistance can, indeed, perform "surgery," and (2) that "surgery on a toe is not surgery"; Pierson also opined that Lara was given antibiotics for no reason, as there was no sign of infection in his toe. *Id.* at 11-12. Another concern form regarding the infection was returned to Lara by Defendant Roberts, who stated that Plaintiff knew "the risks and side effects" and had the right to refuse care. *Id.* at 12.

Lara also filed a grievance with respect to the medical treatment for his toe. Defendant Pierson was the Level 1 Responder, and Defendant Roberts was the Level 2 Responder. The grievance was denied with the following response: "You agreed to the procedure, and the risk involved. If you need additional care please submit an H.S.R. to be seen in clinic." *Id.* at 13. Lara appealed. Defendant Siegert, acting as the appellate

authority, affirmed the denial of the grievance, stating, "I would encourage you to follow up with a provider by submitting an HSR, if your toe does not feel better soon." *Id.* at 14.

Plaintiff alleges that after his condition grew worse he was placed on multiple rounds of antibiotics, and ultimately underwent a second toe surgery on April 20, 2017. *Id.* at 14-15.

On May 1, 2017, he filed the instant action. His Complaint includes a number of claims against various defendants. This Court conducted an Initial Review and allowed Lara to proceed only with his Eighth Amendment medical treatment claims against Defendants Brown, Pierson, Roberts, Siegert, and Corizon. Dkt. 7, at 25-27. All other claims, and all other Defendants, were dismissed without prejudice. Dkt. 19.

Siegert filed her Motion for Summary Judgment on March 5, 2018. Dkt. 21. Shortly thereafter, Lara filed a Cross-Motion for Partial Summary Judgment (Dkt. 30), and then, on July 24, 2018, Defendants Corizon, Brown, Pierson, and Roberts filed their Motion for Summary Judgment (Dkt. 33).

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). Importantly, the Court does not make credibility determinations at this stage of the

litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). Failure to fulfill that obligation can constitute an Eighth Amendment violation cognizable under § 1983. *Id. at* 103-05. To prevail on his Eighth Amendment claim for inadequate medical care, Lara must show that Defendants were deliberately indifferent to his "serious medical needs." *Id.* at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To satisfy the objective standard, Lara must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. "Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

"A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell*, 763 F.3d at 1066 (quoting Toguchi, 391 F.3d at 1057)). This "requires more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not

support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### i. Objective, Serious Medical Need

Some district courts outside of the Ninth Circuit have found that ingrown toenails constitute an objective, serious medical need. *See, e.g., McKeithan v. Iannuzzi*, 2011 U.S. Dist. LEXIS 146675, at *13 (M.D. PA. Dec. 21, 2011). Others have found ingrown toenails do not meet this standard, even if the toe becomes infected. *See, e.g., Marchwicz v. O'Mara*, 2011 U.S. Dist. LEXIS 132895, at *10 (D. N.H. Oct. 25, 2011).

The Ninth Circuit has indicated that a serious medical need exists if an inmate has "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992). In light of the Ninth Circuit's relatively broad view of the standard, an ingrown toenail, and the risk of infection or other complication following its removal, may qualify. Thus, the Court assumes, without deciding, that Lara has satisfied the objective standard.

### ii. Deliberate Indifference

For the sake of clarity, the Court will address the subjective standard as it applies to each of the Defendants.

#### a. P.A. Brown

Lara claims that Brown acted with deliberate indifference because he was "only a physician's assistant" when he performed the procedure, and he "botched" the surgery, leading to pain, suffering, and infection. Lara also claims that Brown made rude comments while treating him, such as, "I told you [your toe] would get infected. . . . Well, welcome to prison.'" Dkt. 3 at 11.

As an initial matter, the rude manner in which Brown allegedly interacted with Lara is unfortunate. However, even if Lara's claims are true, this alone does not establish deliberate indifference. "[D]elivery of medical service in an allegedly rude manner may not be the most pleasant or effective way to treat patients, [however] it does not amount to deliberate indifference." *McDermott v. Valley*, No. 3:11-CV-00331-BLW, 2014 WL 1270733, at *7 (D. Idaho Mar. 26, 2014) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir.1987)). The Court will, however, consider this rude treatment in conjunction with Lara's other allegations in determining whether Brown acted with deliberate indifference.

As for Lara's claims that a physician's assistant is not qualified to remove an ingrown toenail, Brown counters that this is simply untrue. He states that removal of ingrown toenails is within the scope of his practice, that he has been specifically trained on the procedure, and that he has performed hundreds of similar procedures over the course of his career. Lara has provided no support—other than his own opinion—for his contention that a physician's assistant is not qualified to perform such procedures. This does not create a triable issue of fact because Lara has not shown that he has any medical expertise or training that informs his views. *See Fleming v. LeFevere*, 423 F. Supp. 2d

1064, 1070 (C.D. Cal. Nov. 22, 2005) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.")). Nor has Lara provided any counter-argument or evidence to refute Brown's claim that the procedure was within the scope of his training and practice.

Additionally, even if Brown "botched" the procedure—which Lara has provided no evidence of—this is not enough to establish deliberate indifference. As noted, "[n]either negligence nor gross negligence will constitute deliberate indifference," *Clement*, 220 F. Supp. at 1105, and mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. *See Broughton*, 622 F.2d at 460.

The record also lacks sufficient evidence to show Brown was deliberately indifferent in his treatment of Lara immediately after the procedure, or during follow up visits. Lara's Complaint states that after the procedure, Brown cleaned the wound, and gave him instructions on how to care for his toe. Dkt. 3, at 8. Additionally, Brown's stated reasons for not immediately prescribing antibiotics or painkillers appear reasonable.

Regarding antibiotics, Brown explains that he did not prescribe them immediately following the procedure because the wound was not yet infected, Lara had just completed a round of antibiotic treatment, and overuse of antibiotics can have negative consequences, including the development of antibiotic-resistant bacteria. Dkt. 33-3, at 3. Regarding painkillers, Brown explains that he did not prescribe them following the

procedure because Lara already had an active prescription for a painkiller referred to as "APAP." *Id.* In his professional opinion, prescribing another painkiller was therefore unnecessary. *Id.* Lara does not dispute these claims, nor has he presented any argument as to why Brown's decisions regarding antibiotics and painkillers were unsound, unreasonable, or deliberately indifferent to his medical needs.

Additionally, it appears that it was who Brown later recommended that Lara begin another round of antibiotics, and ultimately ordered an additional x-ray of Lara's toe, which led to the decision to perform a second procedure that appears to have resolved the issues affecting Lara at the time. *Id.* at 4. Again, Lara has not disputed this contention, and such a course of treatment directly undermines Lara's claim of deliberate indifference.

In sum, even viewing the facts in the light most favorable to Lara, and drawing all inferences in his favor, *at most* he has alleged a potential claim of negligence or medical malpractice. His allegations and the record before the Court could not, however, allow a reasonable jury to find that Brown acted with deliberate indifference in violation of the Eighth Amendment.

The unfortunate reality of medical care is that infection or other complications may occur even after receiving treatment from professionals who are competent, well-trained, and perform procedures with utmost skill. While the pain and suffering that Lara experienced due to his ingrown toenail and subsequent infection is unfortunate, the record simply does not support a finding that Brown acted deliberately indifferent to Lara's medical needs.

MEMORANDUM DECISION AND ORDER - 10

b. *Corizon*

Lara claims Corizon has a policy of refusing adequate medical treatment by stating "submit an HSR" when an inmate seeks needed medical care. Dkt. 3, at 14. However, this Court already dismissed this contention in its Initial Review because Lara provided "no factual assertions in the Complaint plausibly suggesting that any such policy or custom actually exists." Dkt. 7, at 16. While this contention has already been dismissed, the Court simply notes that—although Lara continues to raise this allegation—he still has not provided factual assertions to plausibly suggest any such policy or custom exists.

Next, Lara alleges that Corizon was deliberately indifferent by allowing a physician's assistant to perform an ingrown toenail removal. *Id.* at 17. As the Court already noted, this contention does not create a triable issue of fact because Lara has not shown that he has any medical expertise or training that informs his opinion that physician's assistants should not remove ingrown toenails, nor has he provided any counter-argument or evidence to refute Brown's claim that the procedure was within the scope of his training and practice.

The Court finds that no reasonable jury could find Corizon acted deliberately indifferent to Lara's medical needs.

c. *Siegert, Pierson, and Roberts*

Finally, Lara claims Siegert, Pierson, and Roberts were all deliberately indifferent by failing to adequately respond to his concern forms and grievance. In these forms, Lara expressed his belief that a physician's assistant should not have been allowed to remove his ingrown toenail, raised concerns overs Brown's rude treatment of him, demanded that

Brown be fired, requested additional care from a medical doctor, voiced his frustration over being told to "submit an HSR" if he needed additional care, and requested compensation for the pain and suffering he had been through. *See* Dkt. 3, at 11-14; Dkt. 21-2, at 8-9; Dkt. 29, at 32-48.

The Court has reviewed Lara's inmate concern and grievance forms, as well as the Defendants' applicable responses contained in the record. This record simply does not contain sufficient evidence to support a finding of deliberate indifference from Siegert, Pierson, or Roberts. Although being reminded of the proper channels for requesting medical care may have been frustrating for Lara, this does not amount to deliberate indifference. In fact, following these instructions is what ultimately led to Lara receiving the care that he needed. Additionally, even if Siegert, Pierson, and Roberts had the authority to fire Brown or provide Lara with compensation for his pain and suffering, their refusal to do so is reasonable under the circumstances.

In sum, the medical treatment Lara received was constitutionally adequate, and Siegert, Pierson, and Roberts' responses to his inmate concern forms and grievances were not deliberately indifferent. Based upon the record before the Court, no reasonable jury could find otherwise—even if Lara's factual allegations are accepted as true. Accordingly, the Court finds good cause to GRANT Siegert's Motion for Summary Judgment (Dkt. 21), GRANT Corizon, Brown, Pierson, and Roberts' Motion for Summary Judgment (Dkt. 33), and DENY Lara's Cross-Motion for Partial Summary Judgment (Dkt. 30).

# V. ORDER

1. Siegert's Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

2. Lara's Cross-Motion for Partial Summary Judgment (Dkt. 30) is **DENIED**.

3. Corizon, Brown, Pierson, and Roberts' Motion for Summary Judgment (Dkt. 33) is **GRANTED**.

4. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 31, 2019

David C. Nye
Chief U.S. District Court Judge